T.C. Memo. 2002-295

UNITED STATES TAX COURT

LEWIS PETER AND JUDY HASTY LARSON, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10315-01.                Filed December 2, 2002.

Lewis Peter Larson and Judy Hasty Larson, pro sese.

David R. Ferguson and C. Teddy Li, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined a deficiency in, and
an accuracy-related penalty under section 6662(a)[1] on, petition-
ers' Federal income tax (tax) in the amounts of $6,367 and

_____

[1]All section references are to the Internal Revenue Code
(Code) in effect for the year at issue.  All Rule references are
to the Tax Court Rules of Practice and Procedure.

$1,264, respectively.

The only issue remaining for decision is whether petitioners are liable for 1999 for the accuracy-related penalty under section 6662(a). We hold that they are.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.[2]

At the time the petition was filed, petitioners, who are married, resided in Annapolis, Maryland.

During 1999, Ms. Larson was a homemaker. Sometime during 1999, Ms. Larson also worked for Calvary United Methodist Church, for which she received wages of $175.

Since at least 1995, Mr. Larson has worked for various startup companies as a nonemployee and/or an employee. During 1999, Mr. Larson worked for Telepad Corporation (Telepad), Data Search Inc. (Data Search), and Windermere Information Technology Systems (Windermere). During that year, Telepad paid Mr. Larson $10,000 in wages that it reported in Form W-2, Wage and Tax

---

[2]On Sept. 9, 2002, the date of the trial herein, petitioner Judy Hasty Larson (Ms. Larson) and respondent's counsel signed the stipulation of facts in this case. Petitioner Lewis Peter Larson (Mr. Larson) was in California on that day and did not sign the stipulation of facts or appear at trial. Although Mr. Larson did not appear at trial, Ms. Larson informed the Court that Mr. Larson had authorized her to speak for both of them at trial, and the Court allowed her to do so. Mr. Larson signed the brief that petitioners filed in this case for himself as well as for Ms. Larson.

Statement (Form W-2); Data Search paid Mr. Larson $2,500 in nonemployee compensation that it reported in Form 1099-MISC, Miscellaneous Income (Form 1099); and Windermere paid Mr. Larson $63,233 in wages that it reported in Form W-2 and $21,891.95 in nonemployee compensation that it reported in Form 1099.[3]

Due to a printing alignment error in Form 1099 that Windermere issued to Mr. Larson for 1999 in which it reported that it paid Mr. Larson $21,891.95 in nonemployee compensation, the first digit of that amount of nonemployee compensation (i.e., "2") appeared in that form on top of the preprinted dollar sign (i.e., "$") that appeared in that form. (We shall refer to the foregoing printing alignment error as the alignment error). Because of the alignment error, it was not readily apparent from reviewing Form 1099 that Windermere issued to Mr. Larson for 1999 that the amount of nonemployee compensation reported therein was $21,891.95, as opposed to $1,891.95.

From January 2002 until about three weeks before the time of the trial in this case, Mr. Larson was the president and the chief financial officer of Mooney Aerospace. About three weeks before the trial in this case, Mr. Larson became the chief executive officer of that company.

Sometime on or after April 16, 2000, petitioners jointly

[3]During 1999, Windermere also made $2 in medical payments to Mr. Larson.

filed Form 1040, U.S. Individual Income Tax Return, for 1999 (1999 joint return). In Schedule C, Profit or Loss From Business (Schedule C), of that return, petitioners reported with respect to Mr. Larson's nonemployee business activity gross income totaling $4,392, total expenses of $4,341, and a net profit of $51. The $4,392 of gross income reported in Schedule C of petitioners' 1999 joint return consisted of nonemployee compensation of $2,500 from Data Search that it reported in Form 1099 issued to Mr. Larson for 1999 and nonemployee compensation of $1,892[4] from Windermere that petitioners assumed Windermere reported in Form 1099 issued to Mr. Larson for 1999. Petitioners did not at any time attempt to verify the accuracy of their assumption regarding the amount of nonemployee compensation reported in Form 1099 that Windermere issued to Mr. Larson for that year.

On May 23, 2001, respondent issued to petitioners a notice of deficiency (notice) for 1999. In that notice, respondent determined, inter alia, that the correct amount of nonemployee compensation that Mr. Larson received from Windermere during 1999 and that petitioners should have reported in Schedule C of the

---

[4]Petitioners rounded up to the nearest dollar the $1,891.95 of nonemployee compensation that they assumed Windermere reported in Form 1099 issued to Mr. Larson for 1999.

1999 joint return was $21,891,[5] and not the $1,892 that petitioners reported in that schedule.  Respondent also determined in the notice that petitioners are liable for the year at issue for the accuracy-related penalty under section 6662(a) because of a substantial understatement of tax under section 6662(b)(2).

## OPINION

The only issue remaining for our consideration is whether petitioners are liable for the accuracy-related penalty under section 6662(a).  Pursuant to section 7491(c), respondent bears the burden of production with respect to that issue.[6]  In order to meet respondent's burden of production, respondent must come forward with sufficient evidence indicating that it is appropriate to impose the accuracy-related penalty in this case.[7]  Higbee

---

[5]Respondent rounded down to the nearest dollar the $21,891.95 of nonemployee compensation that Windermere reported in Form 1099 issued to Mr. Larson for 1999.

[6]With respect to court proceedings arising in connection with examinations commencing after July 22, 1998, under sec. 7491(c) respondent bears the burden of production with respect to an individual's liability for any penalty or addition to tax. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.  In any case in which there is no examination, sec. 7491(c) applies to court proceedings arising in connection with taxable periods or events beginning or occurring after July 22, 1998.  Id.  It is reasonable to assume that any examination of petitioners' taxable year 1999 must have occurred sometime after petitioners filed their 1999 joint return (i.e., sometime on or after Apr. 16, 2000). Moreover, the only taxable period at issue in this case is 1999.

[7]Although respondent bears the burden of production with respect to the accuracy-related penalty at issue, respondent "need not introduce evidence regarding reasonable cause, substan-
(continued...)

v. Commissioner, 116 T.C. 438, 446 (2001).  However, the burden of proof remains with petitioners on that issue.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Higbee v. Commissioner, supra at 446-447.

As pertinent here, section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the underpayment of tax resulting from a substantial understatement of tax.  Sec. 6662(b)(2).  An understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in the tax return, sec. 6662(d)(2)(A), and is substantial in the case of an individual if it exceeds the greater of 10 percent of the tax required to be shown or $5,000, sec. 6662(d)(1)(A).

In Schedule C of their 1999 joint return, petitioners included nonemployee compensation from Windermere of only $1,892.  That is because, due to the alignment error in Form 1099 that Windermere issued to Mr. Larson for 1999, petitioners assumed that $1,892 was the amount of nonemployee compensation reported in that form, when in fact $21,891.95 was the amount of such compensation reported in that form.  Petitioners do not dispute that Windermere paid nonemployee compensation of $21,891.95 to Mr. Larson during 1999.  Nor do petitioners dispute that the understatement of tax in this case exceeds the greater of 10

---

[7](...continued)
tial authority, or similar provisions. * * * the taxpayer bears the burden of proof with regard to those issues." Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

percent of the tax required to be shown in the 1999 joint return or $5,000. See sec. 6662(d)(1)(A). On the record before us, we find that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the accuracy-related penalty in this case.

Although petitioners do not dispute that Windermere paid nonemployee compensation of $21,891.95, and not $1,892, to Mr. Larson during 1999 and that there is a substantial understatement of tax for 1999 under section 6662(d), it is petitioners' position that they are not liable for the accuracy-related penalty under section 6662(a). That is because, according to petitioners, they "used reasonable care in the preparation of their tax returns" and "should not be penalized as allowed by Sec. 6664(c)(1)." In support of their position, petitioners contend, inter alia:

> Larson was paid on an hourly basis for work performed at Windermere and the number of hours varied from week to week throughout the year. The hours spent at Windermere were few initially and gradually increased. Windermere and Larson agreed to transition Larson from an hourly consultant to an employee to allow him to participate in their medical plan as soon as he was committing sufficient hours to them to allow for his inclusion in their medical plan.

> This conversion from Consultant to Employee was done approximately one year prior to his preparing this 1999 tax return in April of 2000. It would not be reasonable to assert, as the Respondent has, that the exact date and the proportions of time spent on Windermere activities versus unpaid hours at Telepad would have been so precisely and permanently committed to memory, that they could be recalled one year later. Larson relied solely on the Form 1099 data provided by Windermere. Adding to the confusion was a form W-2 from Windermere which Petitioners assumed included the

income understated in the badly printed 1099. (Exhibit "B")

In April of 2000, when it came time to prepare 1999 tax returns, the Larsons were having work done on their home and were living in a small cottage owned by friends who were out of town. Larson constructed his return with limited access to his records by pulling relevant documents together, inputting them into a computer Excel program and summarizing them. Where possible or relevant, he compared all numbers to prior year numbers. This is useful for checking several of the items in the return, but since income varied widely from 1998 to 1999, it was not useful for the line item in question. The Form 1099 from Windermere (Exhibit "A") has the amount of $1891 clearly typed on it. It was only apparent in retrospect, that there was a 2 overtyped on the Bold preprinted $ sign. The actual amount paid to him as a consultant was $21891, before he was converted to an employee of Windermere. Since the IRS obtains this data in electronic format instead of print, they had the advantage of receiving a clear number, where Mr. Larson did not.

*     *     *     *     *     *     *

Mr. Larson used reasonable care in saving all his tax documents to prepare his statement, entered them into a computer program to eliminate math errors, took the precaution to compare to prior years, then used that program to complete his tax forms. Due to the irregular nature of his earnings and their timing, theses mistakes were not easily discernable. [Repro-duced literally.]

Before turning to petitioners' position that under section 6664(c)(1) the Court should not hold them liable for the accuracy-related penalty, we note that substantially all of the above-quoted factual allegations, including the alleged details surrounding Mr. Larson's work history with respect to Windermere, petitioners' living arrangements during April 2000, and Mr. Larson's preparation of the 1999 joint return, are not supported by the record in this case, and we shall not rely on them to

resolve the issue presented under section 6662(a).[8]  See Rule
143(b).

We address now petitioners' position that they "used reason-
able care in the preparation of their tax returns" and "should
not be penalized as allowed by Sec. 6664(c)(1)."  Pursuant to
section 6664(c)(1), the accuracy-related penalty under section
6662(a) does not apply to any portion of an underpayment if it is
shown that there was reasonable cause for, and that the taxpayer
acted in good faith with respect to, such portion.  The determi-
nation of whether the taxpayer acted with reasonable cause and in
good faith depends on the pertinent facts and circumstances.
Sec. 1.6664-4(b)(1), Income Tax Regs.  "Generally, the most
important factor is the extent of the taxpayer's effort to assess
the taxpayer's proper tax liability.  Circumstances that may
indicate reasonable cause and good faith include * * * the
experience, knowledge, and education of the taxpayer."  Id.
Although reliance on an information return does not necessarily
demonstrate reasonable cause and good faith, such reliance
"constitutes reasonable cause and good faith if, under all the
circumstances, such reliance was reasonable and the taxpayer
acted in good faith."  Id.

---

[8]Petitioners advance on brief certain factual allegations in
addition to those quoted above, which we also find are not
supported by the instant record and on which we shall not rely.
See Rule 143(b).  In addition, petitioners attached certain
documents to their brief.  To the extent those attached documents
are not a part of the record in this case, the Court has disre-
garded them.  See Rule 143(b).

We must determine whether petitioners acted with reasonable cause and in good faith within the meaning of section 6664(c)(1) and the regulations thereunder when they reported in Schedule C of their 1999 joint return only $1,892, and not $21,891.95, as the nonemployee compensation that Mr. Larson received from Windermere during 1999. Petitioners contend that they did. In support of that contention, petitioners point out that, because of the alignment error in Form 1099 that Windermere issued to Mr. Larson for the year at issue, it was not readily apparent from reviewing that form that the amount of nonemployee compensation reported therein was $21,891.95, and petitioners assumed that the amount of such compensation reported in that form was $1,891.95. On the instant record, we reject petitioners' argument that under section 6664(c)(1) and the regulations thereunder the Court should not hold them liable for the accuracy-related penalty under section 6662(a).

It is significant that, by reporting only $1,892, instead of $21,891.95, as the amount of nonemployee compensation that Mr. Larson received from Windermere during 1999, petitioners failed to report approximately (1) 91 percent of the total nonemployee compensation that Mr. Larson received from Windermere during that year and (2) 82 percent of the total nonemployee compensation that he received from Windermere and from Data Search during that

year.[9]  However, at no time did Mr. Larson, an experienced businessman, and Ms. Larson attempt to verify the accuracy of the amount of nonemployee compensation (i.e., $1,892) that they assumed was shown in Form 1099 which Windermere issued to him for 1999.  We believe that petitioners should have attempted to ascertain why the amount that they assumed Windermere reported in that form was extremely small when compared to the amount of work that he performed for Windermere as a nonemployee during 1999.  They did not.[10]

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of establishing that there was reasonable cause for, and that they acted in good faith with respect to, the underpayment in this case.  On that record, we find further that petitioners have failed to carry their burden of establishing that they are not liable for 1999 for the accuracy-related penalty under section

---

[9]Moreover, by reporting only $1,892, instead of $21,891.95, as the amount of nonemployee compensation that Mr. Larson received from Windermere during 1999, petitioners failed to report approximately (1) 23½ percent of the total nonemployee and employee compensation that Windermere paid to Mr. Larson during that year and (2) 20½ percent of the total nonemployee and employee compensation that all payors paid to Mr. Larson during that year.

[10]Nor did petitioners attempt to determine why the amount that they assumed Windermere reported in Form 1099 issued to Mr. Larson for 1999 was small when compared to the amount of work that he performed for Windermere as a nonemployee and an employee during that year.

6662(b)(2).[11]

We have considered all of the contentions and arguments of petitioners that are not discussed herein, and we find them to be without merit and/or irrelevant.[12]

To reflect the foregoing and the concessions of petitioners,

Decision will be entered

for respondent.

---

[11]In light of our finding that petitioners are liable for the year at issue for the accuracy-related penalty because of a substantial understatement of tax under sec. 6662(b)(2), we shall not address respondent's contention that petitioners are liable for the year at issue because of negligence or disregard of rules or regulations under sec. 6662(b)(1).

[12]In this connection, we note that, in support of their position in this case, petitioners rely on Vandeyacht v. Commissioner, T.C. Memo. 1994-148. In that case, we held, inter alia, that the taxpayers there involved were not liable for additions to tax under sec. 6653(a)(1) of the Code in effect for 1983, 1984, and 1985. We find Vandeyacht to be distinguishable from the instant case and petitioners' reliance on that case to be misplaced. The taxpayers in Vandeyacht hired a bookkeeper and an accountant to ensure the accuracy of their tax returns. We held that the taxpayers in Vandeyacht exercised reasonable care and prudence where certain mistakes made by their bookkeeper were not easily discernable from the spreadsheets that that bookkeeper had provided to their accountant or from the tax returns that that accountant had prepared. In the instant case, petitioners have failed to establish that they exercised reasonable care and prudence to ensure the accuracy of the 1999 joint return.